No. 23-70023

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

In re CIVIL BEAT LAW CENTER FOR THE PUBLIC INTEREST, INC.,

Petitioner,

v.

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF HAWAII,

Respondent.

## RESPONSE IN OPPOSITION TO PETITION FOR WRIT OF MANDAMUS

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney General*

DANIEL TENNY
JENNIFER L. UTRECHT
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7710*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 353-9039*

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY .......................................................................... 1

STATEMENT ................................................................................................................ 3

ARGUMENT ................................................................................................................ 5

I.    The Challenged Procedural Rules Do Not Violate Any Established
Rights ................................................................................................................ 7

    A.    Neither the First Amendment nor the Common Law Recognizes
a Right of Access to Documents That Have Historically Been
Kept Confidential for Important Policy Reasons ...................................... 7

    B.    Both History and Logic Confirm That There Is No Qualified
Right of Public Access to the Documents at Issue ................................. 10

        1.    Presentence Reports ......................................................................... 10

        2.    Competency Evaluations ................................................................. 17

        3.    Sentencing Filings Setting Forth the Defendant's
Substantial Assistance ....................................................................... 22

    C.    Petitioner Identifies No Valid Basis for Invalidating the
Challenged Rules ........................................................................................ 28

CONCLUSION .......................................................................................................... 32

STATEMENT OF RELATED CASES

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Associated Press v. U.S. Dist. Court for the Cent. Dist. of Cal.*,
705 F.2d 1143 (9th Cir. 1983) ...................................... 28

*Caraballo v. State*,
39 So.3d 1234 (Fla. 2010) ...................................... 18, 20

*CBS, Inc. v. U.S. Dist. Court for the Cent. Dist. of Cal.*,
765 F.2d 823 (9th Cir. 1985) ...................................... 26

*Cheney v. U.S. Dist. Ct. for the Dist. of Columbia*,
542 U.S. 367 (2004) ...................................... 5

*Copley Press, In re*,
518 F.3d 1022 (9th Cir. 2008) ...................................... 9, 30

*Detroit News, Inc. v. Recorder's Court Judge*,
509 N.W.2d 894 (Mich. Ct. App. 1993), *aff'd sub nom.*
*People v. Atkins*, 514 N.W.2d 148 (Mich. 1994) ...................................... 20

*El Vocero de P.R. (Caribbean Int'l News Corp.) v. Puerto Rico*,
508 U.S. 147 (1993) ...................................... 28

*Forbes Media LLC v. United States*,
61 F.4th 1072 (9th Cir. 2023) ...................................... 8, 9, 10, 19, 25

*Globe Newspaper Co. v. Superior Court*,
457 U.S. 596 (1982) ...................................... 28

*Index Newspapers LLC v. U.S. Marshals Serv.*,
977 F.3d 817 (9th Cir. 2020) ...................................... 9

*Longoria v. United States*,
No. 7:12-cv-21, 2015 WL 13387861 (S.D. Tex. Mar. 11, 2015) ...................................... 24-25

*Morning Song Bird Food Litig., In re*,
831 F.3d 765 (6th Cir. 2016) ...................................... 11, 12, 14, 15

*Nixon v. Warner Commc'ns, Inc.,*
    435 U.S. 589 (1978) ................................................................. 9

*Oregonian Publ'g Co. v. U.S. Dist. Court for the Dist. of Or.,*
    920 F.2d 1462 (9th Cir. 1990) .................................................. 8

*People v. Atkins,*
    514 N.W.2d 148 (Mich. 1994) ................................................. 18

*Phoenix Newspapers, Inc. v. U.S. Dist. Court for the Dist. of Ariz.,*
    156 F.3d 940 (9th Cir. 1998) .............................................. 8, 29

*Press-Enterprise Co. v. Superior Court of Cal.,*
    478 U.S. 1 (1986) .............................................................. 7, 8

*Richmond Newspapers, Inc. v. Virginia,*
    448 U.S. 555 (1980) ................................................................. 7

*Rita v. United States,*
    551 U.S. 338 (2007) ............................................................... 11

*Times Mirror Co. v. United States,*
    873 F.2d 1210 (9th Cir. 1989) ..........................8, 14, 18-19, 19

*United States v. Arenburg,*
    605 F.3d 164 (2d Cir. 2010) .................................................. 18

*United States v. Armstrong,*
    185 F. Supp. 3d 332 (E.D.N.Y. 2016) ................................... 24

*United States v. Biagon,*
    510 F.3d 844 (9th Cir. 2007) ................................................. 23

*United States v. Brooklier,*
    685 F.2d 1162 (9th Cir. 1982) ............................................... 29

*United States v. Burns,*
    409 F. App'x 913 (6th Cir. 2011) .......................................... 24

*United States v. Business of Custer Battlefield Museum & Store,*
    658 F.3d 1188 (9th Cir. 2011) ............................................ 7, 9

*United States v. Corbitt*,
   879 F.2d 224 (7th Cir. 1989) ...................................................................... 11, 21

*United States v. Doe*,
   870 F.3d 991 (9th Cir. 2017) .........................................2, 9, 22, 23, 25, 27, 30

*United States v. Doe*,
   962 F.3d 139 (4th Cir. 2020) ..................................................................9, 24, 25

*United States v. Gatto*,
   763 F.2d 1040 (9th Cir. 1985) ........................................................................... 6

*United States v. Guerrero*,
   693 F.3d 990 (9th Cir. 2012) ....................................................... 5, 6, 8, 19, 20

*United States v. Harris*,
   204 F. Supp. 3d 10 (D.D.C. 2016) .................................................................. 24

*United States v. Hubbard*,
   721 F. App'x 102 (3d Cir. 2018) ..................................................................... 24

*United States v. Huckaby*,
   43 F.3d 135 (5th Cir. 1995) .............................................................................. 11

*United States v. Index Newspapers LLC*,
   766 F.3d 1072 (9th Cir. 2014) ........................................................................... 9

*United States v. Kaczynski*,
   154 F.3d 930 (9th Cir. 1998) ...............................................................19, 21, 22

*United States v. Pena*,
   227 F.3d 23 (2d Cir. 2000) ............................................................................... 11

*United States v. Schlette*:
   842 F.2d 1574 (9th Cir. 1988), *amended*,
     854 F.2d 359 (9th Cir. 1988) .....................................11, 12, 13, 15, 16, 31
   854 F.2d 359 (9th Cir. 1988) ......................................................................... 16

*United States v. Smith*,
   123 F.3d 140 (3d Cir. 1997) ............................................................................... 8

*United States v. Sonin,*
167 F. Supp. 3d 971 (E.D. Wis. 2016) .......................................................... 25

*United States v. Texas,*
507 U.S. 529 (1993) ................................................................................ 9, 31

*U.S. Dep't of Justice v. Julian,*
486 U.S. 1 (1988) .......................................................................................... 11

**Statutes:**

18 U.S.C. § 3552 ............................................................................................ 10

18 U.S.C. § 3553(e) ............................................................................... 1, 4, 22

18 U.S.C. § 4241(b) ....................................................................................... 17

18 U.S.C. § 4247(c) ........................................................................................ 17

28 U.S.C. § 2071(b) ........................................................................................ 30

Ariz. Rev. Stat. § 13-4508(E) ......................................................................... 18

Cal. Penal Code § 1369.5(a)-(c) ...................................................................... 18

Ga. Code Ann. § 17-7-129(a)-(b) ................................................................... 18

Ga. Code Ann. § 17-7-130(b)(1) ..................................................................... 18

Mo. Rev. Stat. § 552.030(3) ............................................................................ 18

N.C. Gen. Stat. § 15A-1002(d) ....................................................................... 18

Wis. Stat. § 971.14(4) ..................................................................................... 18

**Rules:**

Fed. R. Crim. P. 32(c)-(d) ............................................................................... 10

Fed. R. Crim. P. 32(c)(3)(A) advisory committee's notes to 1974 amendments .......... 14

Fed. R. Crim. P. 32(e) ..................................................................................... 10

Fed. R. Crim. P. 32(f) ................................................................10-11

Fed. R. Crim. P. 32(f)(2) ................................................................ 12

Fed. R. Crim. P. 32(f)(3) ..........................................................11, 15

Fed. R. Crim. P. 32(g) ..................................................................... 11

Fed. R. Crim. P. 32(i)(3)(B) ........................................................... 15

Fed. R. Crim. P. 35 ................................................................1, 4, 26

Fed. R. Crim. P. 35 advisory committee's notes to 1991 amendments ........................ 27

Fed. R. Crim. P. 35(b) .........................................................22, 23, 27

Fed. R. Crim. P. 35(b) (1985) ....................................................26-27

Fed. R. Crim. P. 49.1 advisory committee's notes to 2007 adoption ........................... 24

Ninth Circuit Local Rule 27-13.......................................................... 13

D. Alaska Crim. R. 32.1(f) ............................................................... 23

D. Kan. L. Crim. R. 59.6.1 .............................................................. 24

D. Me. Local R. 132(g)................................................................... 24

D. Mont. L.R. CR 49.3(a)(2)(C) ...................................................... 17

D. Mont. L.R. CR 49.3(a)(2)(E) ...................................................... 23

D. Mont. L.R. CR 55.1(d)(4) ........................................................... 17

D. Nev. LCR 32-2(a) ...................................................................... 13

E.D. Cal. L. Crim. R. 460(a) ........................................................... 13

E.D. Mich. LCrR 32.1(i) ................................................................. 13

E.D. Mo. L.R. 13.05(C)(3)(a) .......................................................... 24

E.D. Tex. Crim. R. 49(c)(6)-(11) ..................................................... 24

E.D. Wis. Gen. L.R. 79(d)(5) .................................................. 24

Local Rule 5.2 ................................................................... 1

Local Rule 5.2(a) .................................................. 1, 4, 29, 31

Local Rule 5.2(a)(2) ................................................ 1, 5, 12, 14

Local Rule 5.2(a)(8) ......................................................... 1, 5

Local Rule 5.2(a)(9) ......................................................... 1, 5

Local Rule 5.2(b)(4) ......................................................... 1, 4

Local Rule 32.2(a)(1) ..................................................... 12, 14

Local Rule 32.2(a)(2) ..................................................... 12, 14

Local Rule 32.2(b) ............................................................ 13

Local Rule 32.2(b)(3) ........................................................ 11

Local Rule 32.2(b)(4) ........................................................ 11

Local Rules W.D. Wash. CrR 55(b)(6) ......................................... 17

Local Rules W.D. Wash. CrR 55(b)(9) ......................................... 24

M.D. La. Crim. R. 32(c) ...................................................... 24

N.D. Cal. Local Crim. R. 32-4 ................................................ 12

N.D. Cal. Local Crim. R. 32-5 ................................................ 12

N.D.N.Y. Local Crim. R. 32.1(c)(2)(b) ........................................ 12

S.D. Ala. GenLR 5.2(c)(1) .................................................... 18

W.D. Mich. LCrR 32.2(d) ...................................................... 13

D. Guam CRLR 32(a)(5) ........................................................ 13

D. N. Mar. I. LCrR 79.2(b)(1)(C) ............................................. 17

Ala. R. Crim. P. 11.5(a) ................................................................. 18

Hawaii Court Records Rule 2.19 .................................................. 18

Hawaii Court Records Rule 9.1 .................................................... 18

N.H. R. Crim. P. 51(e) .................................................................. 18

N.M. R. 5-602.1(O) ....................................................................... 18

**Other Authorities:**

Nat'l Council on Crime & Delinquency, *Model Sentencing Act* (1963) ........................... 11

Order, *In re Civil Beat Law Ctr. for the Pub. Interest*,
No. 23-00175 (D. Haw. May 17, 2023), Dkt. No. 24 .................................... 3

U.S. Dist. Court for the Dist. of Ariz.,
*Electronic Case Filing Administrative Policies and Procedures Manual* (May 2023) ............. 17

U.S. Dist. Court for the Dist. of Me.,
*Local Civ. Rules, App. IV* ............................................................. 18

U.S. Dist. Court for the E. Dist. of Wash.,
*Procedures for the Filing of Sealed and Ex Parte Documents for Criminal Defense Counsel*
(July 29, 2021) ..................................................................... 23-24

U.S. Dist. Court for the N. Dist. of Miss.,
*Standing Order Governing the Filing and Restricting of Psychological/Psychiatric Matters in Criminal Cases* (July 7, 2017) ....................................................... 18

U.S. Dist. Courts for the N. Dist. of Miss. & the S. Dist. of Miss.,
*Local Uniform Criminal Rules* (Dec. 1, 2019) .......................................... 24

U.S. Dist. Court for the N. Dist. of Tex.,
*Second Amended Special Order No. 19-1* (Jan. 5, 2017) ................................. 24

U.S. Dist. Court for the S. Dist. of Cal.,
*Electronic Case Filing Administrative Policies and Procedures Manual*
(Mar. 14, 2023) ................................................................... 17, 23

U.S. Dist. Court for the S. Dist. of Iowa,
*Restriction Levels on Specific Events* (Jan. 2014) ................................................................ 13

U.S. Dist. Court for the S. Dist. of Tex.,
*Admin. Procs. for Elec. Filing in Civ. & Crim. Cases* (Jan. 1, 2007) .................................. 13

U.S. Dist. Court for the W. Dist. of Wis.,
*Admin Order No. 337* (May 25, 2017) ............................................................................ 13

U.S. Sent'g Guidelines Manual § 5K1.1 (U.S. Sent'g Comm'n 2021) .................... 1, 4, 22

## INTRODUCTION AND SUMMARY

This mandamus petition challenges certain provisions in a local rule of criminal procedure in the United States District Court for the District of Hawaii: Local Rule 5.2. That rule specifies that certain categories of documents that are routinely sealed in criminal cases may be filed under seal without an accompanying motion requesting the leave of the court. Local Rule 5.2(a). The rule further provides that the district court may order at "any time" that any of these documents be unsealed if the court determines that the document was "improperly" filed under seal "or no longer needs to be sealed." Local Rule 5.2(b)(4). Petitioner here does not claim that the filing procedures contemplated by the rule are generally infirm. Indeed, petitioner has no apparent issue with the automatic sealing (subject to later unsealing) of most of the covered categories of documents.

Instead, petitioner identifies three categories of documents that, in its view, are not sufficiently sensitive to warrant the same treatment: (i) documents outlining objections or corrections to sealed Presentence Investigation Reports, Local Rule 5.2(a)(2); (ii) court-ordered competency evaluations, Local Rule 5.2(a)(8); and (iii) "filings setting forth the substantial assistance of [d]efendant in the investigation or prosecution of another person pursuant to U.S. Sentencing Guidelines § 5K1.1, Fed. R. Crim. P. 35, or 18 U.S.C. § 3553(e)," Local Rule 5.2(a)(9). But as with the other categories of documents covered by the rule, these documents routinely contain sensitive information whose public disclosure could be highly prejudicial to criminal

defendants and the criminal justice system. Presentence reports have historically been treated as confidential documents, and objections or corrections to the content of those reports are themselves part of the reports and necessarily address the same sensitive information, including such things as unsubstantiated allegations of the defendant's involvement in uncharged crimes. Likewise, competency evaluations contain personal and medical information over which the defendant has a significant privacy interest, including information that may have no bearing on the court's consideration of the defendant's competency. And as this Court recently recognized in *United States v. Doe*, 870 F.3d 991 (9th Cir. 2017), defendants and the federal government have compelling interests in maintaining under seal sentencing filings that describe a defendant's cooperation with ongoing criminal investigations, because those filings, if made public, are regularly used to identify and harm cooperators and their families.

Courts across the country routinely restrict access to these categories of documents for important historical and policy reasons, demonstrating the fundamental flaw in petitioner's assumption that these documents carry a qualified right of access under the First Amendment. This Court has never recognized a right of access to these documents, and petitioner has not provided any basis for this Court to do so for the first time in connection with this mandamus petition. Petitioner points to a handful of decisions that have ordered the release of individual documents falling within the categories covered by the rule. But those decisions merely

underscore that such releases should be made only if a case-specific analysis reveals that unusual circumstances warrant disclosure. That is precisely what the rule contemplates, which is consistent with both the Constitution and the common law.

Relatedly, the availability of case-by-case adjudication of the propriety of unsealing particular documents—a process of which petitioner has availed itself both before and after the change to the local rules, *see, e.g.*, Order, *In re Civil Beat Law Ctr. for the Pub. Interest*, No. 23-00175 (D. Haw. May 17, 2023), Dkt. No. 24—illustrates that there are means other than a writ of mandamus to obtain access to the documents that petitioner seeks. To the extent that a request for access to particular documents is denied, petitioner may challenge the local rules in any appeal from that denial, permitting this Court to resolve its claims with the assistance of full briefing, a properly developed record, and factual findings. These considerations weigh heavily against issuing the writ here. The petition should be denied.

## STATEMENT

This case concerns a local procedural rule that was adopted by the United States District Court for the District of Hawaii on December 16, 2022, and went into effect on January 1, 2023. That rule provides that parties generally "may not file pleadings, memoranda, declarations, affidavits, or exhibits under seal" without requesting leave of court, unless filing under seal is "otherwise required by state or federal law, [the court's] Criminal Local Rules, or an order already entered in the

3

case." Local Rule 5.2(a). The rule further provides that the following documents

shall be filed under seal "automatically" and without need for a separate motion:

(1) unexecuted summonses or warrants, supporting applications, and affidavits;

(2) Presentence Investigation Reports (including drafts) and Sentencing Statements outlining objections or corrections to them;

(3) Statements of Reasons in the judgment of conviction;

(4) juvenile records;

(5) documents containing identifying information about jurors or potential jurors;

(6) financial affidavits filed in seeking representation pursuant to the Criminal Justice Act;

(7) ex parte requests for authorization of investigative, expert, or other services pursuant to the Criminal Justice Act;

(8) competency evaluations;

(9) filings setting forth the substantial assistance of Defendant in the investigation or prosecution of another person pursuant to U.S. Sentencing Guidelines § 5K1.1, Fed. R. Crim P. 35, or 18 U.S.C. § 3553(e);

(10) motions for writs to produce incarcerated witnesses for testimony; and

(11) motions for subpoenas.

*Id.* If, however, the court determines that any sealed document has "been improperly

sealed or no longer needs to be sealed," the court may "order its unsealing" in whole

or in part. Local Rule 5.2(b)(4).

Petitioner Civil Beat Law Center for the Public Interest filed this petition for a writ of mandamus in this Court, challenging the practice of filing certain documents under seal without requiring a separate motion. Petitioner makes no objection to the automatic sealing of most documents covered by the rule. It claims, however, that the rule is unconstitutional and violates a common-law right of access insofar as it covers filings that outline objections or corrections to sealed presentence reports, Local Rule 5.2(a)(2); competency evaluations, Local Rule 5.2(a)(8); and "sentencing filings regarding a criminal defendant's cooperation," Pet. 2; Local Rule 5.2(a)(9).

## ARGUMENT

"The writ of mandamus 'is a drastic and extraordinary remedy reserved for really extraordinary causes.'" *United States v. Guerrero*, 693 F.3d 990, 999 (9th Cir. 2012) (quoting *Cheney v. U.S. Dist. Court for the Dist. of Columbia*, 542 U.S. 367, 380 (2004)). In determining whether that "drastic" remedy is appropriate, this Court considers: (1) whether the petitioner has "no other means to obtain the desired relief," (2) whether it will be "damaged or prejudiced in any way not correctable on appeal," (3) whether the district court's order is "clearly erroneous as a matter of law," (4) whether that error is an "oft repeated" one or one that "manifests a persistent disregard of the federal rules," and (5) whether the order "raises new and important problems or issues of first impression." *Id.* "[T]he absence of the third factor, clear error, is dispositive." *Id.* (alteration in original) (quotation marks omitted). Thus, to warrant issuance of the writ, petitioner must show that its right to relief is "clear and

indisputable." *Id.* (quotation marks omitted). Unless this Court is "firmly convinced that the district court was wrong," it "cannot issue the writ, even though the district court's interpretation might be overruled later on direct appeal." *Id.* at 1000 (quotation marks omitted); *see also United States v. Gatto*, 763 F.2d 1040, 1046 (9th Cir. 1985) (courts of appeals cannot exercise supervisory power "absent 'a clear basis in fact and law for doing so'").

Petitioner has not demonstrated a clear and indisputable entitlement to the extraordinary remedy of mandamus. Petitioner's challenge to the district court's local rules largely proceeds from the erroneous premise that the public has a qualified right of access to these documents under the First Amendment. Petitioner argues that this access cannot be restricted by categorical rules, because in its view, there are less restrictive means (such as by redacting filings or requesting sealing orders in individual cases) that would adequately protect the government's compelling interests in nondisclosure. But as discussed further below, this Court has never recognized any presumption of access to these categories of documents under the First Amendment, and petitioner cannot establish that this Court should recognize such a right for the first time in connection with this mandamus petition. Instead, petitioner cites a few cases that have held that disclosure of individual documents falling within these categories was appropriate because the party seeking disclosure made a sufficiently strong showing of a legitimate need for disclosure. But even to the extent those cases are properly understood to recognize some limited right of access to individual filings

under the common law, they do not support petitioner's challenge to the local

procedural rules.  The petition should be denied.

## I.     The Challenged Procedural Rules Do Not Violate Any Established Rights

### A.     Neither the First Amendment nor the Common Law Recognizes a Right of Access to Documents That Have Historically Been Kept Confidential for Important Policy Reasons

At the outset, petitioner has failed to support its claim that the public has a

qualified right to access the categories of documents at issue here.  This Court has

generally recognized two qualified rights of access to judicial proceedings and records:

"a common law right 'to inspect and copy public records and documents, including

judicial records and documents,' and 'a First Amendment right of access to criminal

proceedings' and documents therein."  *United States v. Business of Custer Battlefield

Museum & Store*, 658 F.3d 1188, 1192 (9th Cir. 2011) (citation omitted).  Neither right,

however, is comprehensive or absolute.  Many documents and filings are excluded

from their scope.

The First Amendment protects a qualified right of access to certain court

proceedings, such as criminal trials, based on an "unbroken, uncontradicted" line of

history that demonstrates "that a presumption of openness inheres" in the

proceeding.  *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 564, 573

(1980) (plurality opinion); *see also, e.g., Press-Enterprise Co. v. Superior Court of Cal.*, 478

U.S. 1, 8 (1986) (*Press-Enterprise II*).  But this right is not unlimited; "the First

Amendment is not an all-access pass to any court proceeding or court record." *Forbes Media LLC v. United States*, 61 F.4th 1072, 1077 (9th Cir. 2023). Instead, to determine whether a First Amendment right of access attaches, the Supreme Court has adopted a two-part test, known as the "experience and logic" test. *Id.* (quoting *Press-Enterprise II*, 478 U.S. at 9).

First, a court must decide whether the specific type of proceeding or record at issue "has been traditionally conducted in an open fashion." *Forbes*, 61 F.4th at 1077-78 (quoting *Oregonian Publ'g Co. v. U.S. Dist. Court for the Dist. of Or.*, 920 F.2d 1462, 1465 (9th Cir. 1990)). Second, a court must determine whether "public access plays a significant positive role in the functioning of the particular process in question," including whether access to the proceeding or record "might operate as a curb on prosecutorial or judicial misconduct" or would further the public's interest in understanding the criminal system. *Id.* at 1079 (quoting *Times Mirror Co. v. United States*, 873 F.2d 1210, 1217 (9th Cir. 1989)). "If a proceeding fulfills both parts of the test, a qualified First Amendment right of access arises," *Phoenix Newspapers, Inc. v. U.S. Dist. Court for the Dist. of Ariz.*, 156 F.3d 940, 946 (9th Cir. 1998), and courts may restrict access to the proceeding or record only upon a showing that disclosure has a substantial probability of harming compelling government interests and that less restrictive alternatives will not adequately protect that interest, *Guerrero*, 693 F.3d at 1002; *see also United States v. Smith*, 123 F.3d 140, 151 (3d Cir. 1997) (holding that there

8

is "no presumptive First Amendment right of access" to see sentencing memoranda or attend a sentencing hearings that "reveal grand jury material").[1]

There is also "a general right to inspect and copy public records and documents" under the common law. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). Where the right applies, it can be restricted by statute or regulation, *see United States v. Texas*, 507 U.S. 529, 534 (1993), or if a court determines that there are "sufficiently important countervailing interests" that outweigh the public's interest in disclosure, *United States v. Index Newspapers LLC*, 766 F.3d 1072, 1088 (9th Cir. 2014) (quotation marks omitted). In addition, as with the First Amendment right, the common law right of access is not unlimited; it does not extend to "materials for which 'there is neither a history of access nor an important public need justifying access.'" *Forbes*, 61 F.4th at 1081.

In other words, the common law right of access is "generally understood" to be less protective than the First Amendment. *United States v. Doe*, 870 F.3d 991, 997 (9th Cir. 2017) (quoting *Custer Battlefield*, 658 F.3d at 1197 n.7); *see also United States v. Doe*, 962 F.3d 139, 145 (4th Cir. 2020) ("The public's right to access documents under

---

[1] This Court has also suggested that, in some circumstances involving entirely novel proceedings, "logic alone . . . may be enough to establish the right." *In re Copley Press*, 518 F.3d 1022, 1026 (9th Cir. 2008); *but see Index Newspapers LLC v. U.S. States Marshals Serv.*, 977 F.3d 817, 846 (9th Cir. 2020) (O'Scannlain, J., dissenting) (criticizing the "[l]ower courts, . . . including ours," for "extend[ing] the right of public access largely without extensive historical backing and without further guidance from the Supreme Court regarding the specific contours of the doctrine").

the First Amendment is narrower in scope but stronger in force.").  But the question of whether a presumption of access attaches at all involves "roughly similar considerations of historical tradition and the risks and benefits of public disclosure." *Forbes*, 61 F.4th at 1081-82.  As discussed further below, the categories of documents at issue here have historically been restricted from public access for important policy reasons.  Petitioner thus cannot establish that there is a categorical presumption of public access to these documents under either the First Amendment or the common law.

### B.    Both History and Logic Confirm That There Is No Qualified Right of Public Access to the Documents at Issue

#### 1.    Presentence Reports

Presentence Reports (PSRs) are confidential documents prepared by the U.S. Probation Office of the district court after a comprehensive inquiry into a broad-ranging set of considerations relevant to sentencing.  In addition to all factors relevant to the applicable sentencing guidelines, the report also addresses the defendant's personal and family history, prior criminal record, financial condition, and circumstances affecting behavior, among other topics.  *See* Fed. R. Crim. P. 32(c)-(d); 18 U.S.C. § 3552.  As part of the process of developing that report, the Federal Rules of Criminal Procedure require disclosure of the draft report to the defense and the prosecution before sentencing, Fed. R. Crim. P. 32(e), to permit the parties an opportunity to submit written objections to the probation office, Fed. R. Crim. P.

10

32(f).  Though not required by the federal rules, some courts—like the District of Hawaii—require that these objections both be filed with the court and submitted to the probation office.  Local Rule 32.2(b)(3).  After receiving the objections, the probation office must revise the report as it determines appropriate and then file the PSR along with "an addendum containing any unresolved objections, the grounds for those objections, and the probation officer's comments on them."  Fed. R. Crim. P. 32(f)(3), (g); *see also* Local Rule 32.2(b)(4).

Although presentence reports play an important role in the sentencing process, *see Rita v. United States*, 551 U.S. 338, 351 (2007), they are almost universally filed under seal and are not subject to release to third parties absent a "showing of special need," *U.S. Dep't of Justice v. Julian*, 486 U.S. 1, 12 (1988); *see also* Nat'l Council on Crime & Delinquency, *Model Sentencing Act* § 4 (1963) ("Such reports shall be part of the record but shall be sealed and opened only on order of the court.").  For this reason, the courts of appeals have long recognized that PSRs "occupy a unique position that falls outside the scope of both the First Amendment and the common law rights of access."  *In re Morning Song Bird Food Litig.*, 831 F.3d 765, 773 (6th Cir. 2016); *United States v. Pena*, 227 F.3d 23, 26 (2d Cir. 2000); *United States v. Huckaby*, 43 F.3d 135, 138 (5th Cir. 1995); *United States v. Corbitt*, 879 F.2d 224, 237 (7th Cir. 1989); *cf. United States v. Schlette*, 842 F.2d 1574, 1579 (9th Cir. 1988) (recognizing that a "strong presumption in favor of confidentiality [for PSRs] has been established by the courts"), *amended*, 854 F.2d 359 (9th Cir. 1988).

**a.** Petitioner does not object (Pet. 5 n.2) to the local rule's provisions, or the historic practice of, restricting access to PSRs. Instead, petitioner challenges the local rule only insofar as it restricts access to the parties' "sentencing statements," Local Rule 5.2(a)(2), which is the court's term for the "formal objection[s] to the draft Presentence Report" required by the federal rules, Local Rule 32.2(a)(1). Those objections to the draft PSR are distinct from a "sentencing memorandum," which includes "a party's written argument regarding the appropriate sentence." Local Rule 32.2(a)(2). Like the PSR itself, objections to the PSR are equally protected from disclosure by experience and logic. As the Sixth Circuit recently recognized, the parties' objections to drafts are not independent from the PSR; they are prepared "as part of the confidential process of creating the PSR" outlined by the federal rules. *In re Morning Song*, 831 F.3d at 774.

Petitioner does not identify a case or secondary source recording a history of public access to objections to draft PSRs. As noted above, PSRs have historically been entirely confidential. Before 1975, most courts did not even disclose the report to the defendant, much less permit him to comment on or object to drafts. *See Schlette*, 842 F.2d at 1579. Furthermore, the federal rules do not require that parties submit their objections to the court—only that they be submitted to the probation office. Fed. R. Crim. P. 32(f)(2). The public thus does not have access to objections in most cases, because those objections are not filed with the courts. *E.g.*, N.D. Cal. Local Crim. R. 32-4, 32-5; N.D.N.Y. Local Crim. R. 32.1(c)(2)(b). And as discussed,

to the extent the objections are included as an addendum to the final PSR, public access to that document is typically restricted. *E.g.*, Ninth Circuit Local Rule 27-13 ("In cases in which any presentence report is referenced in the brief, the party first filing that brief must file under seal the presentence report, the documents attached to the report, and any sentencing memoranda filed under seal in the district court."). That some courts, like the District of Hawaii, require objections to draft PSRs be filed under seal with the court, *see* Local Rule 32.2(b), does not change the fact that these objections are furnished to the probation office as part of a historically confidential process, and that the objections are incorporated into the final PSR, which is indisputably protected from disclosure. Whether or not objections are filed with the court, public access to those documents is regularly and appropriately restricted.[2]

Nor does petitioner identify any significant positive role that would be served by public access. Petitioner argues (Pet. 26) (quoting *Schlette*, 842 F.2d at 1583) that objections should be publicly available because the public has a "legitimate interest" in viewing sentencing *advocacy* in order to understand how sentencing decisions are made. This argument proceeds from a flawed premise. The district court's local rules

---

[2] *E.g.*, D. Nev. LCR 32-2(a) (PSR and "supporting documents" are "confidential court documents and are not available for public inspection"); E.D. Cal. L. Crim. R. 460(a) (PSRs and "related documents"); D. Guam CRLR 32(a)(5); E.D. Mich. LCrR 32.1(i); W.D. Mich. LCrR 32.2(d); U.S. Dist. Court for the W.D. Wis., *Admin Order No. 337*, at 2-3 (May 25, 2017); U.S. Dist. Court for the S. Dist. of Tex., *Admin. Procs. for Elec. Filing in Civ & Crim. Cases* § 6(C)(1) (Jan. 1, 2007); U.S. Dist. Court for the S. Dist. of Iowa, *Restriction Levels on Specific Events* (Jan. 2014).

13

differentiate between sentencing advocacy—in a Sentencing Memorandum, which is ordinarily not filed under seal, *see* Local Rule 32.2(a)(2)—and factual objections to a draft PSR in a Sentencing Statement, which is subject to the provision at issue in this case, *see* Local Rule 32.2(a)(1); Local Rule 5.2(a)(2) (referring to "Sentencing Statements outlining objections or corrections to" a draft PSR). The function of objections "differs significantly from the function of sentencing memoranda and extrinsic evidence presented in open court" during sentencing hearings. *In re Morning Song*, 831 F.3d at 775. Unlike sentencing memoranda, which advocate for a particular sentencing outcome, the objection process "serves to 'examine the soundness and sufficiency of the presentence report.'" *Id.*; *see also* Fed. R. Crim. P. 32(c)(3)(A) advisory committee's notes to 1974 amendments ("The best way of insuring accuracy is disclosure [to the defense] with an opportunity for the defendant and counsel to point out . . . information thought by the defense to be inaccurate, incomplete, or otherwise misleading.").

Furthermore, "many of the same policy concerns that underlie PSRs' presumptive confidentiality apply" with equal force to objections made as part of the presentence investigation. *In re Morning Song*, 831 F.3d at 775. Among other things, defendants have a strong privacy interest in PSRs because, as with grand jury materials, PSRs may contain allegations of the defendant's involvement in uncharged crimes. *See Times Mirror*, 873 F.2d at 1219-20 (grand jury transcripts and pre-indictment warrant materials are not subject to any right of public access). And

14

because PSRs are not constrained by the traditional rules of evidence, they may include contested facts in the interest of "obtaining a wide range of information relevant to the sentencing decision." *In re Morning Song*, 831 F.3d at 776. This consideration applies with equal force to objections, which "necessarily refer to the content of the PSR itself and tend to focus on the most controversial pieces of information, information that may be supported only by hearsay or other unreliable evidence." *Id.* PSRs also "often contain information gleaned from confidential informants," which must likewise be protected. *Id.*

Objections also allow the probation office to correct inaccurate information before the final report is submitted. *See* Fed. R. Crim. P. 32(f)(3). And because the federal rules permit the court to bypass objections by not considering contested facts in sentencing, Fed. R. Crim. P. 32(i)(3)(B), "[c]ontested facts frequently remain in the report even if the court chooses to disregard them for sentencing or expressly finds them inaccurate," *In re Morning Song*, 831 F.3d at 776. There is no basis for creating a right of access to disputed or unconfirmed information that may not even be relied upon by courts in sentencing.

**b.** Glossing over the historic and nationwide practice of restricting access to presentence reports and their objections, petitioner erroneously suggests that this Court has recognized a qualified right of access in *Schlette*, 842 F.2d at 1579. That case concerned a motion to disclose a PSR brought by the estate of a man previously convicted of arson who committed suicide after murdering the attorney who

15

prosecuted him. *Id.* at 1576; *see also* 854 F.2d at 359-60. Under the "unusual facts" of that case, *id.* at 1582, this Court found that the estate and the media had made a "sufficient showing supporting disclosure" to overcome the "strong presumption in favor of confidentiality" of PSRs, 842 F.2d at 1579, 1583.

Notably, however, *Schlette* did not hold that the public had a right to compel disclosure of a PSR under the First Amendment. 842 F.2d at 1582 (declining to reach that question). As noted, PSRs are generally recognized to be properly filed under seal, and petitioner does not contest in this case the local rule's application to PSRs themselves, as opposed to objections to PSRs, which were not at issue in *Schlette*. To the extent that *Schlette* may be understood as recognizing, in unusual cases, some authority to order the disclosure of individual PSRs under the common law, the case does not support petitioner's claim that any such right is so well established that courts must presume a right of public access unless the facts of a particular case warrant otherwise. To the contrary, *Schlette* held that there was a "strong presumption in favor of confidentiality" of PSRs, and that public access could be restricted in the absence of a "sufficient threshold showing of a legitimate need for disclosure." *Id.* at 1579, 1584; *see also id.* at 1579 (stating that disclosure of a presentence report to a third party is appropriate only if disclosure "is necessary to serve the ends of justice" (internal quotations omitted)). That holding is entirely consistent with a rule of procedure that requires PSRs and their objections to be filed under seal, subject to later unsealing upon a motion of a third party or on the court's own initiative.

16

### 2. Competency Evaluations

**a.** Competency evaluations are also confidential documents. Under 18 U.S.C. § 4241(b), a court may order a psychiatric or psychological examination of the defendant be conducted in advance of a hearing to determine a defendant's competency to stand trial. The court may also require that the licensed professionals conducting these examinations file extensive reports describing the defendant's medical history, the examiner's findings, and the examiner's opinions as to the defendant's competency. *Id.*; 18 U.S.C. § 4247(c).

Because these reports contain personal and medical information over which the defendant has a significant privacy interest, including information that may have no bearing on the court's ultimate determination of the defendant's competency to stand trial, courts routinely file competency evaluations under seal. By petitioner's own admission, at least five other districts in this circuit have local rules or filing procedures that restrict public access to these documents. D. Mont. L.R. CR 49.3(a)(2)(C), 55.1(d)(4); D. N. Mar. I. LCrR 79.2(b)(1)(C); Local Rules W.D. Wash. CrR 55(b)(6); U.S. Dist. Court for the Dist. of Ariz., *Electronic Case Filing Administrative Policies and Procedures Manual* § II.Q No. 7 (May 2023); U.S. Dist. Court for the S. Dist. of Cal., *Electronic Case Filing Administrative Policies and Procedures Manual* § 1.h(g), at 6 § 2.p(7), at 19 (Mar. 14, 2023). States and district courts across the country have

17

similar restrictions.[3]  And even where no rules have been codified, courts have recognized that competency reports are generally considered confidential and have permitted them to be filed under seal.  *E.g.*, *People v. Atkins*, 514 N.W.2d 148, 149-50 (Mich. 1994) (holding that there is no First Amendment right to access competency evaluations) (per curiam); *Caraballo v. State*, 39 So.3d 1234 (Fla. 2010) (per curiam); *United States v. Arenburg*, 605 F.3d 164, 166 n.1 (2d Cir. 2010) (per curiam).  This extensive history of protections and restrictions confirms that there is no qualified right of access under the First Amendment.  Indeed, petitioner cites no decision by this Court or any other circuit holding that competency evaluations are generally subject to a First Amendment right of public access.  Instead, petitioner (Pet. 27-29) relies primarily on cases addressing requests for public access to competency *hearings* conducted in open court.

Petitioner argues (Pet. 28) that the ability to inspect competency evaluations would provide the public with "insight into" the workings of the criminal justice system.  But that conclusory statement proves far too much.  "Every judicial proceeding . . . arguably benefits from public scrutiny to some degree."  *Times Mirror*,

---

[3]  *E.g.*, U.S. Dist. Court for the Dist. of Maine, *Local Civ. Rules, App. IV*, Admin. Proc. (g)(7); S.D. Ala. GenLR 5.2(c)(1); U.S. Dist. Court for the N. Dist. of Miss., *Standing Order Governing the Filing and Restricting of Psychological/Psychiatric Matters in Criminal Cases* (July 7, 2017); Ala. R. Crim. P. 11.5(a); Ariz. Rev. Stat. § 13-4508(E); Cal. Penal Code § 1369.5(a)-(c); Ga. Code Ann. §§ 17-7-129(a)-(b), 17-7-130(b)(1); Hawaii Court Records Rules 2.19, 9.1; Mo. Rev. Stat. § 552.030(3); N.M. R. 5-602.1(O); N.H. R. Crim. P. 51(e); N.C. Gen. Stat. § 15A-1002(d); Wis. Stat. § 971.14(4).

873 F.2d at 1213.  For this reason, the "mere recitation" of an interest in public scrutiny is insufficient to establish a qualified right of access under the First Amendment.  *Id.*

Moreover, as with PSRs, courts across the country have recognized that the risk of "harm caused by disclosure of" competency evaluations generally "outweighs the benefit of disclosure to the public," a fact that counsels against recognizing a First Amendment right.  *Forbes*, 61 F.4th at 1079 (quotation marks omitted).  As already noted, these reports contain personal and medical information over which the defendant and others have a significant privacy interest, including information that may have no bearing on the court's consideration of the defendant's competency.  *See United States v. Kaczynski*, 154 F.3d 930, 932 (9th Cir. 1998) (affirming district court decision to release a competency report in a high-profile case with private information unrelated to the defendant's competency redacted to protect the privacy of the defendant and third parties).

In addition, unlike competency *hearings*, which are court proceedings in which "a defendant has the right to be represented by counsel and the opportunity to testify, present evidence, subpoena witnesses, and to confront and cross-examine witnesses," *Guerrero*, 693 F.3d at 1001, the competency *evaluation* is not itself the product of an adversarial process.  Although the psychiatrist's ultimate recommendation will be disclosed (and may be disputed) during the competency hearing itself, a guarantee of confidentiality over the specifics of the report ensures that the defendant and others

19

can speak candidly with the examining psychiatrist, without the risk that otherwise inadmissible, prejudicial, or potentially incriminating statements will be used for improper purposes or spread widely throughout the community. *See, e.g.*, *Detroit News, Inc. v. Recorder's Court Judge*, 509 N.W.2d 894, 898 (Mich. Ct. App. 1993), *aff'd sub nom. People v. Atkins*, 514 N.W.2d 148 (Mich. 1994); *Caraballo*, 39 So.3d at 1252.

**b.** Petitioner suggests (Pet. 28) that the challenged rules are nevertheless invalid because, in petitioner's view, this Court has already recognized a qualified right of access to these documents. Again, however, petitioner misstates this Court's holdings.

For example, petitioner relies upon *Guerrero*, 693 F.3d 990, contending that this Court has recognized a qualified right of access to competency evaluations under the First Amendment. Pet. 27. But *Guerrero* did not reach that question. There, the Court reviewed a mandamus petition seeking to overturn a district court's denial of a motion to close a competency hearing. This Court denied that petition and emphasized that it reviewed the district court's decision under an extremely deferential standard. 693 F.3d at 1000. *Guerrero* thus did not "resolve the underlying legal issue of public access to competency proceedings"; it held only that the standard for mandamus had not been met. *Id.* at 1000-01.

Petitioner's reliance upon *Guerrero* is additionally misplaced because it conflates a purported right to attend a competency hearing with a right of access to all documents related to competency, even if those documents are otherwise confidential

or not discussed in the hearing. *See Corbitt*, 879 F.2d at 228-29 (The "right of access to documents submitted for use in a hearing must be considered separately from the [public's] right to attend the hearing itself."). As discussed above, even though federal sentencing hearings are generally open to public inspection, the PSRs considered as part of sentencing are presumptively confidential. Thus, in analyzing whether a First Amendment right attaches to competency evaluations, the question is not whether the public has historically been able to attend competency hearings but whether the public has historically had access to competency reports prepared for the court. Even if petitioner could demonstrate the former, it has not established the latter.

Petitioner's reliance on *Kaczynski*, 154 F.3d 930, is similarly misplaced. There, this Court upheld a decision to disclose the partially redacted competency evaluation of the notorious "Unabomber," *id.* at 931, concluding that the redactions "properly balanced" the media's "legitimate interest" in disclosure in that case with the defendant's privacy interests, *id.* at 931-32. But *Kaczynski* did not recognize a First Amendment right of access to competency evaluations categorically, nor did it hold— as petitioner asks this Court to—that the public has presumptive access to all competency evaluations unless the facts of a particular case warrant otherwise. Instead, consistent with the district court's local rule, *Kaczynski* held that the media was required to make a "threshold showing of a legitimate need for disclosure" before it could assert a common-law right of access to the evaluation. *Id.* at 931. And on the merits, this Court deferred to the district court's finding that the media's interest was

sufficient in that case to support partial release. *Id.*; *see also id.* at 932 (Reinhardt, J., concurring) ("The common law right of access is subject to the balancing of interests and we review district court decisions in that regard for abuse of discretion.").

### 3. Sentencing Filings Setting Forth the Defendant's Substantial Assistance

**a.** The third type of document at issue, sentencing filings related to a defendant's substantial assistance with another investigation or prosecution, are also routinely afforded confidentiality protections. The federal sentencing guidelines permit courts to reduce sentences for cooperators, including to terms below the mandatory minimum sentence. 18 U.S.C. § 3553(e); U.S. Sent'g Guidelines Manual § 5K1.1 (U.S. Sent'g Comm'n 2021). Likewise, under Federal Rule of Criminal Procedure 35(b), a court may in certain circumstances reduce a defendant's sentence "[u]pon the government's motion" for a reduction based upon the defendant's substantial assistance.

At the same time, criminal defendants face substantial risks as a consequence of their cooperation. As this Court recognized in *Doe*, 870 F.3d 991, sentencing filings requesting such reduced sentences are regularly used to identify and harm cooperators. This Court reached that conclusion based on a report and recommendation from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which identified hundreds of instances of court records being used to identify and harm—sometimes

even murder—cooperators and their families, a risk that had increased exponentially in an era of widespread electronic filing and electronic access to court dockets. *Id.* at 999; *see also United States v. Biagon*, 510 F.3d 844, 849-50 (9th Cir. 2007) (Kleinfeld, J., concurring) ("The most common reason for *in camera* proceedings during sentencing arises when a defendant has cooperated with the government. . . . It is one thing to send a defendant to jail or prison and quite another to set him up to be hurt or killed there.").

Because of this considerable risk of harm, courts regularly restrict access to filings describing defendants' cooperation with other investigations or prosecutions, including motions for downward departures under section 5K1.1 of the Sentencing Guidelines and post-sentencing motions to reduce sentences for substantial assistance under Federal Rule of Criminal Procedure 35(b). As petitioner admits, the challenged rule merely "consolidated and codified" the District of Hawaii's prior local practice of sealing such filings. Pet. 8. At least five other districts in this circuit have similar rules or filing procedures. D. Alaska Crim. R. 32.1(f); U.S. Dist. Court for the S. Dist. of Cal., *Electronic Case Filing Administrative Policies and Procedure Manual*, *supra*, § 2.p(8), at 19; D. Mont. L.R. CR 49.3(a)(2)(E); U.S. Dist. Court for the E. Dist. of Wash., *Procedures for the Filing of Sealed and Ex Parte Documents for Criminal Defense Counsel* 2, 10,

12-14 (July 29, 2021); Local Rules W.D. Wash. CrR 55(b)(9).  Other districts throughout the country follow similar practices.[4]

These restrictions on access are so common that they are reflected in the advisory committee notes to Federal Rule of Criminal Procedure 49.1 ("Privacy Protection For Filings Made with the Court"), which states that the Judicial Conference has limited "remote electronic access to certain sensitive materials in criminal cases," including "sealed documents" such as "motions for downward departure for substantial assistance" or "plea agreements indicating cooperation." Fed. R. Crim. P. 49.1 advisory committee's notes to 2007 adoption.  And even to the extent that these non-public matters arise during open sentencing hearings, they are often addressed in closed sidebars and memorialized in sealed transcripts.  *See, e.g.,* *United States v. Hubbard*, 721 F. App'x 102, 108 (3d Cir. 2018); *United States v. Burns*, 409 F. App'x 913, 914 & n.1 (6th Cir. 2011); *Longoria v. United States*, No. 7:12-cv-21, 2015

---

[4] *E.g.*, D. Me. Local R. 132(g); E.D. Wis. Gen. L.R. 79(d)(5); E.D. Mo. L.R. 13.05(C)(3)(a); D. Kan. L. Crim. R. 59.6.1; E.D. Tex. Crim. R. 49(c)(6)-(11); U.S. Dist. Court for the N. Dist. of Tex., *Second Amended Special Order No. 19-1* (Jan. 5, 2017); M.D. La. Crim. R. 32(c); U.S. Dist. Courts for the N. Dist. of Miss. & the S. Dist. of Miss., *Local Uniform Criminal Rules*, Rule 49.1(B)(2), (C) (Dec. 1, 2019); *see also Doe*, 962 F.3d at 149 (discussing similar standing order in the Eastern District of North Carolina); *United States v. Harris*, 204 F. Supp. 3d 10, 15 (D.D.C. 2016) ("[S]entencing memoranda that include information regarding a defendant's cooperation are often filed under seal."); *United States v. Armstrong*, 185 F. Supp. 3d 332, 335 (E.D.N.Y. 2016) ("[W]hether or not they are later subject to unsealing, sentencing memoranda that implicate cooperation are often filed under seal.").

WL 13387861, at *5 (S.D. Tex. Mar. 11, 2015); *United States v. Sonin*, 167 F. Supp. 3d 971, 980-81 (E.D. Wis. 2016).

As noted above, there are compelling reasons for such restrictions. As *Doe* explains, redaction may be insufficient to protect cooperators from harm because the mere fact of the filing makes clear that a defendant has cooperated. 870 F.3d at 1001-02 (redacted sentencing filings "look different from the filings in non-cooperators' cases," which "readily signal[s]" the defendant's cooperation to those who would wish to harm him). In addition, the government has an "institutional imperative to protect its ongoing investigations" and to be able to provide assurances of confidentiality to secure the "willingness of future defendants to provide substantial assistance to the government." *Id.* at 1000 (quotation marks omitted); *see also Doe*, 962 F.3d at 148 ("Harm to cooperators does not only affect those individuals," it also "interferes with the gathering of evidence, the presentation of witnesses, and the sentencing and incarceration of cooperating defendants" which poses a "substantial threat to the underpinnings of the criminal justice system as a whole." (quotation marks omitted)). By contrast, beyond a general assertion of the benefits of access to any court record, petitioner identifies no benefit of public access to sentencing filings describing a defendant's cooperation, much less a benefit that could outweigh the government's compelling interests in non-disclosure. *See Forbes*, 61 F.4th at 1079 (holding that no First Amendment right of access exists "where the harm caused by disclosure of

judicial records outweighs the benefit of disclosure to the public" (alteration and quotation marks omitted)).

**b.**  Petitioner erroneously cites *CBS, Inc. v. U.S. District Court for the Central District of California*, 765 F.2d 823 (9th Cir. 1985), for the proposition that "cooperator-related sentencing proceedings are subject to a qualified right of public access" under the First Amendment.  Pet. 30.  That case merely applied the general principle that certain documents filed in criminal proceedings are subject to a qualified right of public access to a post-conviction motion filed under seal by a defendant.  765 F.2d at 824-25.  This Court concluded that the references to the defendant's cooperation in the motion and accompanying documents were not sufficient to support sealing and overcome the qualified right of access because the details of defendant's cooperation were largely already "part of the public record."  *Id.* at 824.

This Court's recognition of a First Amendment qualified right of access in *CBS* does not govern the validity of the local rule in this case.  At the time, Sentencing Guidelines Manual § 5K1.1 did not exist, and Rule 35 did not refer to cooperators. The general statement in *CBS* that litigation regarding sentencing is subject to a qualified right of public access thus has no bearing on the question whether a category of document specific to cooperating defendants—which did not exist as a category at the time—should be accessible to the public as a matter of experience and logic.

Notably, the defendant in *CBS* was charged and convicted prior to the effective date of the Sentencing Reform Act of 1984, the legislation that led to the creation of

federal sentencing guidelines. Thus, although the motion at issue in *CBS* was a "Rule 35 motion," Pet. 30, in the sense that it was filed under the version of Federal Rule of Criminal Procedure 35 in effect at the time, that version of the rule had no explicit reference to cooperation with federal authorities and instead generally authorized defendants to file post-conviction motions to reduce their sentence for any number of reasons, most of which would present no evident basis for sealing. *See* Fed. R. Crim. P. 35(b) (1985) ("A motion to reduce a sentence may be made, or the court may reduce a sentence without motion, within 120 days after the sentence is imposed or probation is revoked[] . . . ."). The current version of Rule 35 authorizes only the government to file motions for a reduction in sentence and only on the basis of a defendant's subsequent substantial assistance in the investigation or prosecution of another person. Fed. R. Crim P. 35(b); *see also* Fed. R. Crim. P. 35 advisory committee's notes to 1991 amendments (noting that this change took effect in 1987 with the Sentencing Reform Act). Unlike a motion under the version of Rule 35 that applied in *CBS*, the mere existence of such a motion thus reveals that a defendant has provided substantial assistance to the government, and the motion's contents will necessarily describe that assistance, even if that assistance has not already been made public.

As this Court noted in *Doe*, neither this Court nor the Supreme Court has ever held that a First Amendment qualified right of access attaches to the more particular type of filing relating to a defendant's substantial assistance under the contemporary

Sentencing Guidelines and the current version of Rule 35. *Doe*, 870 F.3d at 997. Experience and logic dictate that no such right should attach; at a minimum, petitioner provides no basis for this Court to recognize such a right for the first time in connection with this mandamus petition.

## C. Petitioner Identifies No Valid Basis for Invalidating the Challenged Rules

Because there is no qualified right of access to the covered categories of documents under the First Amendment, petitioner's various claims that the rule is inconsistent with the First Amendment's procedural protections fail. *See* Pet. 9-17 (discussing those protections at length).

For example, petitioner cites cases (Pet. 14-15, 21-22) that stand for the proposition that courts may not categorically restrict the public from attending hearings or reviewing documents for which there is a First Amendment right of access established by the Supreme Court or this Court. *E.g.*, *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 609, 611 n.27 (1982) (trial testimony); *El Vocero de P.R. (Caribbean Int'l News Corp.) v. Puerto Rico*, 508 U.S. 147, 150-51 (1993) (preliminary hearings); *see also Associated Press v. U.S. Dist. Court for the Cent. Dist. of Cal.*, 705 F.2d 1143, 1147 (9th Cir. 1983) (holding that a blanket protective order sealing each and every pre-trial document filed in a criminal case for 48 hours violates the public's First Amendment right of access to those documents). Petitioner also asserts (Pet. 26, 29, 33) that the challenged rule is invalid because, in its view, there exist less restrictive

alternatives that would adequately protect the compelling interests in nondisclosure, such as requiring redaction of "particularly sensitive information" from each filing. These arguments would be relevant if the categories of documents at issue here were subject to a qualified right of access under the First Amendment, but, as discussed above, they are not.

Moreover, petitioner contends that courts should determine whether to release these documents with redactions on a case-by-case basis. But the district court's local rules contemplate exactly that course of action. The rules do not presume that the documents specified in Local Rule 5.2(a) will remain permanently sealed; only that they may be filed under seal initially without a separate motion, subject to later unsealing in whole or in part. That is consistent with any conceivable right of access to these categories of documents.

For similar reasons, petitioner's challenge finds no support in cases (Pet. 14-15) which hold that the public "must be provided notice and an opportunity to be heard" before the court restricts access to a proceeding for which there is an established First Amendment qualified right of access. *E.g.*, *United States v. Brooklier*, 685 F.2d 1162, 1167-68 (9th Cir. 1982); *Phoenix Newspapers*, 156 F.3d at 949. Again, no such right exists for the documents at issue here. Moreover, the cases relied upon by petitioner do not address the question at issue here: whether a court may adopt, after notice and comment, a rule that certain categories of documents that have not previously been determined to carry a qualified right of access under the First Amendment should be

filed under seal subject to unsealing in a particular case on the court's own motion or the motion of any party. *Cf.* 28 U.S.C. § 2071(b) (authorizing courts to issue rules of procedure after "appropriate notice and an opportunity for comment").

Petitioner also relies on this Court's statement in *Doe* that a "presumption of closure for all court filings would not be consistent with our circuit's case law." 870 F.3d at 1002. That statement is uncontroversial, as this Court has held that some court filings are subject to a qualified right of access under the First Amendment and a blanket presumption of closure for all filings would thus be inconsistent with those holdings. *Doe* casts no doubt on the propriety of the rules at issue here. The Court in *Doe* expressly declined to decide whether district courts could adopt a recommendation by the Judicial Conference that, in every criminal case, a sealed supplement describing the defendant's cooperation (or lack thereof) be filed alongside all plea agreements, sentencing memoranda, and transcripts of guilty pleas, so that the dockets of cooperators were completely indistinguishable from other dockets. *Id.* The Court expressed concern about—but did not resolve—possible tension between that approach and this Court's decision in *In re Copley Press, Inc.*, 518 F.3d 1022, 1026-27 (9th Cir. 2008), which held—albeit without much analysis—that a qualified First Amendment right of public access attaches to, among other documents, a plea colloquy transcript. *Doe*, 870 F.3d at 1002. *Cf. Copley*, 518 F.3d at 1029-30 (holding that despite the qualified First Amendment right, the district court abused its discretion in unsealing portions of the plea agreement that could place third parties in

danger). But the challenged rule in this case does not apply to such transcripts, and the concern expressed in *Doe* thus has no application here.

Finally, as discussed above, in the rare cases in which this Court has ordered or affirmed the disclosure of documents falling within the categories at issue, it has done so only after recognizing that these types of documents are presumptively confidential. *E.g.*, *Schlette*, 842 F.2d at 1579. To the extent these cases are properly understood to recognize some limited right of access under the common law, such rights can be superseded by statute or rule. *E.g.*, *Texas*, 507 U.S. at 534. And in any event, as discussed *supra*, these common-law decisions are entirely consistent with the challenged provisions, which do not presume that documents specified in Local Rule 5.2(a) will remain permanently sealed, but rather, permit these documents to be filed under seal without an accompanying motion, subject to later unsealing in whole or in part.

In short, given the extensive and historic restrictions on public access to the categories of documents at issue here, petitioner cannot establish that there is a clear and indisputable right of access to these documents under either the First Amendment or the common law, much less that the filing procedures contemplated by the local rule—practices shared in common with courts across the country—are invalid. Petitioner thus has not met its burden to show that it is entitled to the extraordinary remedy of a writ of mandamus to require the district court to alter its local rules.

## CONCLUSION

For the foregoing reasons, the petition should be denied.

Respectfully submitted,

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney*
  *General*

DANIEL TENNY

  */s/ Jennifer L. Utrecht*
JENNIFER L. UTRECHT
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7710*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 353-9039*
  *Jennifer.l.utrecht@usdoj.gov*

June 2023

32

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, respondent states that it knows of no related case pending in this Court.

*/s/ Jennifer L. Utrecht*
Jennifer L. Utrecht

## CERTIFICATE OF COMPLIANCE

This response complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface. This response also complies with the type-volume limit of Federal Rules of Appellate Procedure 21(a)(2)(C) and Circuit Rules 21-2 and 32-3, because it contains 8,079 words, which is within the 8,400 word limit.

*/s/ Jennifer L. Utrecht*
Jennifer L. Utrecht